UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HERMINIA O. CARREON,

          Plaintiff,

   v.

ANDREW SAUL, Commissioner of Social Security,

          Defendant.

No. 1:19-cv-00759-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

### I.    <u>Introduction</u>

Plaintiff Herminia O. Carreon ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 20, 24 and 25. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 and 8.

## II.     Procedural Background

On May 5, 2016, Plaintiff filed the pending application for disability insurance benefits alleging disability beginning December 1, 2015.  AR 15.  The Commissioner denied the application initially on September 2, 2016, and following reconsideration on December 21, 2016. AR 15.

On January 26, 2017, Plaintiff filed a request for a hearing.  AR 15.  Administrative Law Judge Scot Septor presided over an administrative hearing on February 15, 2018.  AR 37-69. Plaintiff appeared and was represented by an attorney.  AR 37.  On June 13, 2018, the ALJ denied Plaintiff's application.  AR 15-32.

The Appeals Council denied review on March 26, 2019.  AR 1-6.  On May 29, 2019, Plaintiff filed a complaint in this Court.  Doc. 1.

## III.     Factual Background

### A.     Plaintiff's Testimony

Plaintiff (born January 1959) shared a house with her fiancé and her mother.  AR 44.  She worked in various jobs as an electronics assembler.  AR 45-47, 70.  In December 2015, Plaintiff's employer "laid her off" because she was too frequently leaving work early.  AR 47-48.  Plaintiff testified that her lower back was so painful that she was unable to work a full day.  AR 48-49. She could not sit for long periods.  AR 211.  She experienced numbness and a loss of strength in her upper extremities, which she attributed to arthritis.  AR 49, 60.  Despite therapy and massage her pain was worsening.  AR 50.

Plaintiff used Tramadol and Gabapentin for pain.  AR 51.  Sometimes the medications helped, but sometimes they caused nausea.  AR 51-52.  An epidural injection relieved Plaintiff's pain for only a single day.  AR 57. The pain impaired her concentration.  AR 57.

Plaintiff was able to walk 100 steps to her mailbox.  AR 53.  She cooked less than before because she was "always stabbing [her] finger" due to difficulties holding the food. AR 53-54. When her hands were numb Plaintiff typically purchased sandwiches, soup or salads.  AR 213. She frequently dropped dishes, particularly when washing them.  AR 54.  Plaintiff's household

///

1  chores included only dusting.  AR 55.  The vacuum was too heavy for her, and her fiancé had

2  taken responsibility for the laundry.  AR 55-56.

3        Plaintiff was able to drive a car.  AR 56.  She performed her own personal care without

4  help.  AR 56.  Plaintiff was no longer able to take walks, jog or go to the gym.  AR 215.

5  **B.**      **Third Party Adult Function Report**

6        Plaintiff's fiancé, Herogildo Placheta, stated that Plaintiff had back pain and arthritis in

7  her hand and heel that impaired her ability to walk and bend.  AR 225.  Her back pain also caused

8  poor sleep.  AR 226.  Plaintiff remained able to perform her own personal care, housework and

9  laundry.  AR 226-27.

10  **C.**      **Medical Records**

11        The record includes treatment notes from Roy Tabigo-On, M.D., and other treating

12  professionals at Apex Medical Group, dating from December 2015 to December 2017.  AR 295-

13  344, 364-90, 426-78, 482-85.  Diagnoses included dyslipidemia, anxiety, backache and chronic

14  back pain.  AR 295.  Depression and vision or eye problems were also noted.  AR 297.  Despite

15  these diagnoses, Dr. Tabigo-On repeatedly noted normal mood and affect, normal ambulation and

16  normal gait.  *See, e.g.,* AR 301-02, 305-06, 309-10, 313-14, 317.

17        In May 2016, x-rays of Plaintiff's right hand revealed osteoarthritic changes of the second

18  digital interphalangeal joint.  AR 323.  X-rays of her left ankle showed a small plantar calcaneal

19  spur but no acute abnormality.  AR 325.  In November 2016, x-rays of Plaintiff's lumbar spine

20  were unremarkable.  AR 382.  In August 2017, magnetic resonance imaging of Plaintiff's lumbar

21  spine showed narrowing changes at L5-S1 without neural impingement.  AR 491. In October

22  2017, an ultrasound examination of Plaintiff's abdomen revealed no acute or significant

23  abnormality.  AR 489.

24        From December 2016 to December 2017, Plaintiff attended several psychotherapy

25  sessions with Lorene Garrett-Browder.  AR 431-32, 438-39, 445, 451-52, 468-69, 477-78.  Ms.

26  Garrett-Browder diagnosed anxiety disorder, depressive disorder and somatic symptom disorder

27  with prominent pain.  AR 432.

28  *///*

Neurologist Marco Lopez Vizcarra, M.D., evaluated and treated Plaintiff from March through November 2017.  AR 397-418.  At each appointment the doctor found no abnormalities of Plaintiff's eyes, cardiovascular system, musculoskeletal system and neurological system.  AR 397-418.  Plaintiff was taking hydrocodone without relief.[2]  AR 407, 410. The initial diagnosis was carpal tunnel syndrome and cervical radiculopathy.  AR 398.  A subsequent EMG study revealed no evident neuropathy or radiculopathy in Plaintiff's upper extremities.  AR 399.  An MRI of the cervical spine showed only mild to moderate spondylosis.  AR 399, 416.  Dr. Lopez Vizcarra prescribed Gabapentin, which neither improved Plaintiff's symptoms nor produced any notable side effects.  AR 405.  In June 2017, Plaintiff reported that her back pain was worsening.  AR 405, 408.  Although Plaintiff reported that she had herniated discs, Dr. Lopez Vizcarra noted that the MRI of the lumbar spine showed only moderate spondylosis.  AR 410.  In fact, the radiologist reported that except for disc narrowing at L5-S1, the lumbar MRI was unremarkable.  AR 417.  A rheumatic panel was also unremarkable.  AR 414.

In February 2018, orthopedist Sibel Deviren, M.D., administered a bilateral L5 transforaminal epidural injection.  AR 515-517.  Plaintiff reported that the injection relieved her pain for only a day.  AR 57.

### IV.   Standard of Review

Pursuant to 42 U.S.. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole

---

[2] Plaintiff may not have taken her medications regularly.  The record includes two urine screens that failed to detect any opiates or other medications in Plaintiff's system.  AR 498-99, 502-03, 512.  Two other urine screens were positive for an expected metabolite of hydrocodone.  AR 507, 509.

and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v.*

*Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks

omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its

judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's

decision for harmless error, which exists when it is clear from the record that the ALJ's error was

inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d

1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.     The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must
> establish that he or she is unable to engage in substantial gainful
> activity due to a medically determinable physical or mental
> impairment that has lasted or can be expected to last for a continuous
> period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).
> An individual shall be considered to have a disability only if . . . his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work, but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established

a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding

that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

substantial gainful activity during the period of alleged disability, (2) whether the claimant had

medically determinable "severe impairments," (3) whether these impairments meet or are

medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

///

1  perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs

2  existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).

3  ### VI.    Summary of the ALJ's Decision

4  The Administrative Law Judge found that Plaintiff had not engaged in substantial gainful

5  activity since the alleged onset date of December 1, 2015.  AR 17.  Her severe impairments were

6  degenerative disc disease of the lumbar spine and cervical spondylosis.  AR 17.  None of the

7  severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

8  Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  AR 23-24.

9  The ALJ concluded that Plaintiff had the residual functional capacity to perform medium

10  work as defined in 20 C.F.R. § 404.1567(c), and was capable of lifting 50 pounds occasionally

11  and 25 pounds frequently; standing, walking or sitting for six hours in an eight-hour workday;

12  frequent climbing of ladders, ropes, scaffolds ramps and stairs; and, frequently stooping, reaching

13  overhead, reaching forward and reaching laterally with her right upper extremity.  AR 24.

14  Plaintiff was able to perform her past relevant work as a semiconductor assembler.  AR

15  31.  Accordingly, the ALJ found that Plaintiff was not disabled at any time from December 1,

16  2015, the alleged onset date, through June 13, 2018, the date of the decision.  AR 31-32.

17  ### VII.    The ALJ Properly Assessed the Reliability of Plaintiff's Testimony

18  Plaintiff contends that the ALJ erred in rejecting Plaintiff's symptom testimony without

19  identifying particular findings that were inconsistent with Plaintiff's representations.  The

20  Commissioner disagrees, correctly emphasizing that applicable law precludes granting disability

21  benefits based solely on a claimant's subjective representations.

22  An ALJ is responsible for determining credibility, resolving conflicts in medical

23  testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

24  His or her findings of fact must be supported by "clear and convincing evidence."  *Burrell v.*

25  *Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

26  To determine whether the ALJ's findings are supported by sufficient evidence a court

27  must consider the record as a whole, weighing both the evidence that supports the ALJ's

28  determination and the evidence against it.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989).  "[A] federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency."  *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)) (internal quotation marks omitted).  Federal courts should generally "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'"  *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1098).

Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.  "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281-1282.  In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms."  AR 25.

1    Here, the ALJ did not find Plaintiff to be malingering.  If the claimant satisfies the first

2    step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence

3    of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's

4    ability to perform work-related activities."  S.S.R. 16-3p at 2.  "[S]ome individuals may experi

5    ence symptoms differently and may be limited by symptoms to a greater or lesser extent

6    than other individuals with the same medical impairments, the same objective medical evidence

7    and the same non-medical evidence."  S.S.R. 16-3p at 5.  In reaching a conclusion, the ALJ must

8    examine the record as a whole, including objective medical evidence; the claimant's

9    representations of the intensity, persistence and limiting effects of his symptoms; statements and

10   other information from medical providers and other third parties; and, any other relevant evidence

11   included in the individual's administrative record.  S.S.R. 16-3p at 5.   "The determination or

12   decision must contain specific reasons for the weight given to the individual's symptoms, be

13   consistent with and supported by the evidence, and be clearly articulated so the individual and

14   any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."

15   S.S.R. 16-3p at *10.

16   Because a "claimant's subjective statements may tell of greater limitations than can

17   medical evidence alone," an "ALJ may not reject the claimant's statements regarding her

18   limitations merely because they are not supported by objective evidence."  *Tonapetyan v. Halter*,

19   242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602).  *See also* Bunnell v. Sullivan,

20   947 F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying medical

21   impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his

22   symptoms solely because they are unsupported by medical evidence).  "Congress clearly meant

23   that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain

24   testimony should contribute to a determination of disability."  *Id.* (internal quotation marks and

25   citations omitted).

26   The law does not require an ALJ simply to ignore inconsistencies between objective

27   medical evidence and a claimant's testimony.  "While subjective pain testimony cannot be

28   rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

1   medical evidence is still a relevant factor in determining the severity of claimant's pain and its

2   disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20

3   C.F.R. § 404.1529(c)(2)).  As part of the analysis of the record as a whole, an ALJ properly

4   considers whether the objective medical evidence supports or is consistent with a claimant's pain

5   testimony.  *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to

6   diminish residual functional capacity only to the extent that the alleged functional limitations and

7   restrictions "can reasonably be accepted as consistent with the objective medical evidence and

8   other evidence").  "[O]bjective medical evidence is a useful indicator to help make reasonable

9   conclusions about the intensity and persistence of symptoms, including the effects those

10  symptoms may have on the ability to perform work-related activities."  S.S.R. 16-3p at 6.

11  Because objective medical evidence may reveal the intensity, persistence and limiting effects of a

12  claimant's symptoms, an ALJ must consider whether the symptoms reported by a claimant are

13  consistent with medical signs and laboratory findings of record.  *Id.*  For example, "reduced joint

14  motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result

15  from, or be associated with, pain."  *Id.*

16         The ALJ in this case began her analysis by considering Plaintiff's allegations that she was

17  unable to work due to cervical and lumbar impairments, low back pain, arthritis, plantar fasciitis,

18  depression and anxiety.  AR 24.  He noted that "Plaintiff stopped working because she was laid

19  off as of December 1, 2015 rather than due to her alleged impairments."  AR 24.  The ALJ

20  summarized Plaintiff's testimony:

21              [Plaintiff] explained she would often leave work early due to back
              pain.  She reported that she sometimes cannot handle the pain in her
22            lower back and pain spreads to her feet.  She also alleged issues using
              her hands due to arthritis with tingling and numbness.  She stated she
23            attends therapy, has back massages, uses a TENS unit, and does
              exercises.  She also takes medications which sometimes help the
24            pain, but sometimes becomes nauseous.  The medications also help
              her relax.
25
              The claimant further testified she does chores around the house and
26            cooks once in a while.  She reported she walks only 100 steps when
              she goes to the mailbox, but her feet hurt afterward.  She states she
27            has problems with holding things because her hands go numb
              sometimes.  She washes dishes, but sometimes drops things.  She is
28            able to carry her plate and use eating utensils.  She also dusts, but has

issues running the vacuum cleaner. She also does laundry sometimes. She is able to drive a car. She feels unable to work due to concentration, which she thinks is due to pain. She is able to bathe and take care of herself. She watches television and reads, but hardly understands what she reads. She stated she does not go out with friends. She uses a cell phone, but stated she sometimes drops it due to strength and numbness problems.

AR 24-25.

The ALJ found that the evidence supported diagnoses of degenerative disc disease of the lumbar spine and cervical spondylosis. AR 25. However, despite Plaintiff's complaints, her treating physicians repeatedly noted that she was in no acute distress and walked normally. AR 25. Other than paralumbar tenderness, medical examination and testing established no other abnormalities. AR 25-26. Plaintiff complained of arthralgias, joint pain and back pain but demonstrated no muscle weakness, no swelling of her extremities, no exercise intolerance, no arm pain, no weakness, no numbness, no depression and no fatigue. AR 25-26. Toxicology screenings indicated no presence of Hydrocodone or other opioids or benzodiazepines.[3] AR 25-26. The ALJ provided multiple citations to the administrative record to support his findings, AR 25-26.

Magnetic resonance imaging showed minimal and unremarkable changes. AR 27. Examinations indicated normal strength and tone, no weakness, no exercise intolerance, no fatigue, full range of motion, normal gait and station. AR 26-27. Despite Plaintiff's testimony, no imaging study supported her claim of multiple herniated discs. AR 27.

The hearing decision sets forth abundant evidence in the record to support the ALJ's determination that Plaintiff's representations to the agency were not fully reliable.

///

---

[3] As detailed above, Plaintiff's physicians noted on multiple occasions that despite her allegations of severe pain, Plaintiff failed to take her medications as prescribed. In assessing a claimant's credibility, an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). A claimant's failure to assert a good reason for not seeking treatment, or for failing to follow a prescribed course of treatment, or an ALJ's finding that the proffered reason is not credible, cast doubt on the sincerity of the claimant's testimony. *Fair*, 885 F.2d at 603. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that may improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p at 9.

1    **VIII.    The ALJ Properly Assessed the Reliability of the Third-Party Testimony**

2         Plaintiff contends that the ALJ erred in giving limited weight to Mr. Placheta's testimony,

3    which consisted of responses to questions on the Third-Party Adult Function Report form.  Citing

4    *Turner v. Comm'r of Soc.Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010), the Commissioner responds

5    that an ALJ may discount testimony from a lay witness' third party report by providing reasons

6    germane to that witness.

7         As noted above, the record includes Mr. Placheta's responses at AR 225-32. The ALJ

8    summarized Mr. Placheta's response in detail.  AR 30.  He gave limited weight to the lay

9    opinions finding that they "suggest[ed] impairments which were not consistent with [Plaintiff's]

10   daily activities or with objective evidence of conservative treatment."  AR 30.  In addition, Mr.

11   Placheta's opinions did not set forth quantifiable limitations that could be used to evaluate

12   Plaintiff's limitations.  AR 30.

13        "[F]riends and family members in a position to observe a claimant's symptoms and daily

14   activities are competent to testify to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th

15   Cir. 1993).  Disregarding lay evidence without comment violates the regulatory provision that the

16   Commissioner will evaluate evidence from nonmedical sources.  20 C.F.R. §§ 404.1513(a)(4),

17   416.913(a)(4).  However, "[a]n ALJ need only give germane reasons for discrediting the

18   testimony of lay witnesses." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

19   Inconsistency with medical evidence is a germane reason. *Id.*

20        In this case, the ALJ considered Mr. Placheta's opinions and gave them limited weight

21   explaining that the opinions were not consistent with Plaintiff's daily activities and objective

22   medical records.  AR 30.  The ALJ was not required to do more.

23        **IX.    The ALJ Properly Assessed the Expert Medical Opinions**

24        Plaintiff contends that the ALJ gave inadequate weight to the opinions of her treating

25   physician, Dr. Tabigo-On.  The Commissioner disagrees contending that the ALJ properly

26   evaluated the conflicting expert medical opinions in the record, setting forth specific and detailed

27   explanations of how he determined the weight of the evidence.

28   ///

### A. Medical Opinions

#### 1. Agency Physicians

On initial review, agency psychiatrist Dan Funkenstein, M.D., opined that Plaintiff had no evidence of medical treatment or duration to support her disability claim.  AR 76.  He added that in any event, her alleged mental impairment had minimal effect on Plaintiff's ability to perform basic work activity.  AR 76.  D. Tayloe, M.D., opined that Plaintiff was able to perform medium work with some postural limitations.  AR 76-77.  On reconsideration, psychologist Andres Kerns, Ph.D., and G. Bugg, M.D., concurred with the initial evaluations.  AR 92-93.

#### 2. Consultative Report: Internal Medicine

In July 2016, internist Roger Wagner, M.D., prepared a comprehensive internal medicine evaluation of Plaintiff.  AR 350-54.  Plaintiff's complaints included neck pain radiating into the right arm; low back pain that did not radiate; right shoulder pain; and, bilateral hand stiffness. AR 350-51.  Her medications included Hydrocodone, Pravastatin and Buspirone.  AR 351. Plaintiff had a left heel spur and symptoms of plantar fasciitis, but her doctor had not prescribed an arch support.  AR 351.

Dr. Wagner observed that Plaintiff could easily rise from a waiting room chair, walk to the exam room, and get on and off the examining table.  AR 351.  She could bend at the waist and take her shoes and socks on and off with good dexterity, speed and flexibility.  AR 352.  Plaintiff could also quickly pick up a paperclip by opposing fingertips to thumb.  AR 351.  Examination of Plaintiff's hands revealed enlarged metacarpophalangeal and interphalangeal joints with a few Heberden's nodules at the distal interphalangeal joints but no redness, heat, swelling or tenderness.  AR 351.

The balance of the physical examination was generally normal.  AR 352-53.  Straight leg raising was negative.  AR 353.  Plaintiff demonstrated full strength and intact sensation, normal reflexes and intact cranial nerves.  AR 353.  Dr. Wagner diagnosed neck and shoulder pain likely exacerbated by repetitive activities; low back pain consistent with muscle strain; some shoulder

///

12

pain with full range of motion; mild osteoarthritis of the hands; and, a plantar calcaneal spur.  AR 354.

In Dr. Wagner's opinion, Plaintiff was able to stand and walk for up to six hours in an eight-hour workday with no limitation on sitting. AR 354.  She could lift and carry fifty pounds occasionally and 25 pounds frequently.  AR 354.  Plaintiff could frequently climb, stoop, crouch, and reach overhead and forward with her dominant right arm.  AR 354.  She had no environmental limitations.  AR 354.

### 3.   Consultative Report: Psychiatry

Psychologist F. Yadegar, Ph.D., prepared a mental evaluation of Plaintiff in July 2016. AR 357-60.  Plaintiff told Dr. Yadegar that she could not take any problems and felt like a failure when she thought of something bad.  AR 357.  Plaintiff was prescribed Risperdal but was taking it occasionally instead of three times a day as prescribed.  AR 357.

Plaintiff cried throughout the interview "explaining how bad things are, the difficulty she is having, and she does not know how to solve her problem." AR 358.  She told the doctor that she thought about suicide about once a week.  AR 358.  Her sadness was 9/10 with 10 being depressed.  AR 358.  Plaintiff stated that she was so anxious as to be unstable, but Dr. Yadegar observed no signs of anxiety during the interview.  AR 358.  Dr. Yadegar wrote, "I think she is trying very hard to persuade me that she is really ill and that she is not doing well." AR 358.

Plaintiff had difficulty with the mini mental status test, evincing problems with general knowledge, memory, spelling and calculations.  AR 359.  Concentration was good, and judgment was intact.  AR 359-60.

Dr. Yadegar diagnosed adjustment disorder NOS.  AR 360.  The doctor opined that Plaintiff was functionally unimpaired except for mild impairment of the ability to complete a normal workday or work week without interruptions from a psychiatric condition.  AR 360.

### 4.   Medical Source Statement

Roy Eugene Tabego-On, M.D., had treated Plaintiff since August 2012. AR 288.  He diagnosed multilevel lumbar and cervical disc herniation, osteoarthritis of the hands, and a calcaneal spur.  AR 288.  She had daily sharp pain in her back, neck, hand and heel rated 9/10.

13

AR 288.  Symptoms included tenderness, muscle spasm, chronic fatigue, impaired sleep, swelling, motor loss, reduced grip strength and dropping things.  AR 288.  Her cervical range of motion was significantly limited.  AR 289.  Plaintiff also experienced sharp severe occipital headache pain attributable to her cervical and lumbar spine.  AR 289.  The headaches, which occurred about once weekly, were characterized by photosensitivity, inability to concentrate, impaired sleep, exhaustion, visual disturbances, mood changes and mental confusion.  AR 289.  Medication and lying down relieved Plaintiff's headache pain.  AR 289.  The medication resulted in dizziness.  AR 290.  Plaintiff's mental conditions included depression, easy distractibility, anxiety, panic attacks, decreased energy and sleep disturbances.  AR 290.

In Dr. Tabego-On's opinion, Plaintiff could sit for ten minutes at a time and stand for five minutes at a time before needing to change position.  AR 290.  Plaintiff could sit, stand and walk for one hour each in a normal eight-hour workday.  AR 290.  Plaintiff needed to walk for two minutes every ten minutes or every hour.  AR 291.  Because of muscle weakness, pain and parathesia, she needed to be able to change position at will.  AR 291.  Plaintiff would need unscheduled half-hour breaks about every two hours.  AR 291.

Plaintiff should rarely lift ten pounds or less.  AR 291.  She should never look down, turn her head right or left, look up or hold her head in the same position.  AR 291.  She should never twist, stoop, crouch or climb ladders, and should rarely climb stairs.  AR 292.  Plaintiff could perform manipulations with her hands and fingers about 50 percent of the time, and reach about 80 percent of the time.  AR 292. She was likely to miss work about one day monthly.  AR 292.

### B.  Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p.  The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.

///

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (residual functional capacity is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining residual functional capacity). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews*, 53 F.3d at 1039-40.

"In determining a claimant's [residual functional capacity], an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional, such as that of Dr. Tabrego-On in this case, may be rejected for "specific and legitimate" reasons. *Id.* at 830. The

opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

### C.      The ALJ Properly Analyzed Evidence in the Record as a Whole

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750.  An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

At step two, the ALJ concluded that Plaintiff had only two severe impairments: degenerative disc disease of the lumbar spine and cervical spondylosis.  AR 17.  In making that determination, the ALJ examined in detail the opinions of Drs. Yadegar, Funkenstein and Kerns.  AR 19-22.  Plaintiff does not challenge the ALJ's decision not to include Plaintiff's mental health impairments as severe impairments at step two.

In determining Plaintiff's residual functional capacity at step four, the ALJ gave great weight to Dr. Tayloe's opinion, which he found to be consistent with the weight of the evidence.  AR 27.  Specifically, "Dr. Tayloe's opinion [was] consistent with the generally benign examinations, intermittent nature of Plaintiff's back pain, and the objective clinical and diagnostic evidence."  AR 27.

The ALJ gave significant weight to Dr. Bugg's opinion on reconsideration.  AR 27.  He found that Dr. Bugg's opinion appropriately considered the majority of the evidence submitted to the agency including evidence submitted after Dr. Tayloe evaluated the evidence available at the initial review.  Dr. Bugg appropriately determined that the additional evidence did not support a more limited residual functional capacity than that to which Dr. Tayloe opined.  AR 28.

The ALJ also gave great weight to Dr. Wagner's consultative opinion, which "found no significant deficits in any bodily system." AR 29-30. In an extended and detailed discussion, the ALJ considered Plaintiff's representations to Dr. Wagner of her treatment, conditions and daily activities; Dr. Wagner's observations of Plaintiff's functional abilities in the course of the consultative examination; and, the doctor's findings in the physical examination itself. AR 29-30.

The ALJ summarized Dr. Tabigo-On's medical source statement and found the opinion to be excessive when considered in light of the doctor's objective examination findings, observations and overall conservative treatment. Accordingly, he gave the opinion very little weight, writing:

> Conservative treatment and mild to moderate objective findings do not support this medical source statement. In addition, Dr. Tabigo-On suggests the claimant has multilevel disc herniations, but the MRIs do not support this conclusion. Overall, I find the opinion is not supported by the medical evidence.

> AR 28-29.

The ALJ's finding was fully consistent with the administrative record.

The Court is not required to accept Plaintiff's characterization of her treatment records or her assessment of the medical opinions. The ALJ fully supported his determination based on multiple medical opinions and the evidence of record. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

## X.     Adequacy of the Hypothetical Question concerning Plaintiff's Prior Work

Finally, in a single-paragraph issue, Plaintiff contends that the ALJ based the conclusion that she could perform her prior work as an electronics assembler on a hypothetical question that omitted unspecified limitations and restrictions applicable to Plaintiff. As Defendant points out in his responsive brief, this issue assumes that the Court will agree with Plaintiff's contentions that substantial evidence did not support the ALJ's determination of Plaintiff's residual functional

capacity.  Because this decision declines to accept Plaintiff's contentions that the ALJ erroneously evaluated her testimony, Mr. Placheta's statements and Dr. Tabigo-On's medical source statement, the Court need not reach this issue.

## XI.     Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Herminia O. Carreon.

IT IS SO ORDERED.

Dated:   **August 26, 2020**                        **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE